UNITED STATES of America

v.

Ching S. LAU, Defendant.

No. 67 Cr. 191.

United States District Court
S. D. New York.

July 25, 1968.

Robert M. Morgenthau, U. S. Atty., S. D. of New York, New York City, for the United States; Roger J. Hawke and Lars I. Kulleseid, Asst. U. S. Attys., of counsel.

Irving Younger, New York City, for defendant; Elliot A. Taikeff, New York City, of counsel.

## MEMORANDUM

COOPER, District Judge.

The defendant seeks to be relieved of his plea of guilty entered of record on April 4, 1968 before this Court and an order that the sentence imposed on May 9, 1968 be vacated. It is his position that at the time of plea he was not aware that willfulness was an essential element of the offense involved; and that he was lulled into a sense of security by the assurances of his attorney, who then stood beside him, that a "deal" [1] had been made with the prosecution whereby defendant would receive a sentence of six months, the execution of which in all likelihood would be suspended.[2]

We have before us a defendant about fifty years of age who has had the benefit of substantial education—B.S. in textile engineering (Lowell, Mass.), Master of Science in industrial engineering from Columbia University.[3] He helped organize, controlled and actively participated in the affairs of several corporations during the last twenty years.[4]

---

1. Lau's affidavit verified May 14, 1968, p. 2; Tr. 66 ("Tr." followed by a number refers to pages of the official transcript of the hearing on July 16, 1968).

2. Defendant received a sentence of two years on May 9, 1968 (one year on each of Counts 7, 8 and 9 to run concurrently with each other, and one year on each of Counts 5 and 6 to run concurrently with each other but consecutively to Counts 7, 8 and 9).

3. Lau, Tr. 43, 45.

4. Lau, Tr. 55.

We regard of particular significance on this application certain unequivocal responses by defendant to simple, direct questions put to him when we took his plea. Counts 5, 6, 7, 8 and 9 were read to him; each recites that defendant "wilfully and knowingly" failed to make individual and corporate income tax returns to the Director of Internal Revenue for the calendar years 1960, 1961 and 1962 (Title 26, Section 7203, U.S. Code): to each he pleaded guilty. On that occasion we inquired of defendant whether he clearly understood the nature of the proceedings then in progress, invited him to ask questions with respect thereto, and sought to learn whether he had made full disclosure to his attorney so as to be properly advised of his rights.[5] He reassured us on these matters of our concern and did likewise when we endeavored to learn whether anyone had "promised" him "anything" in return for his plea.[6] On sentence nothing was said in respect of any matter taken up when the plea was entered.

Nowhere do we find defendant asserting that he did not hear and fully comprehend each step of the proceedings in open Court attendant upon the taking of his guilty plea, including the repeated references to "wilfull." What he now insists upon is that while his failure to make and file the tax returns was a fact of which he was well aware at the time they were due, in truth such failure was not intentional and at no time did he wish to convey anything to the contrary.

On June 25, 1968 we granted his application for a hearing primarily to determine whether "he placed his plea of guilty on record without knowledge that 'willfulness' was an essential element of the offense involved." The hearing was held and completed on July 16th. The only witnesses called to the stand were defendant Lau and attorney Pack who represented him at the time of plea and sentence.

■ As we understand it, our function is not to determine the probable guilt of the accused, including the element of willfulness, but whether, at the time of the entry of his plea, Lau had the requisite understanding of the charge against him and knew to what he was pleading guilty. Surely, in the light of the proceedings at plea, the burden of establishing the negative of this proposition rests with him and he must come forward with proof clear and convincing.

Contrary to the advice of his attorney at the time, Lau voluntarily appeared before the Grand Jury. The indictment was filed on March 14, 1967. For considerable time prior thereto and up to approximately the date of pleading, Lau consulted with an attorney named Colbert about his affairs. Colbert was present at the arraignment at which time a copy of the criminal charge was handed

---

5. Official minutes, April 4, 1968, pp. 2–4. At p. 7: THE COURT: You see, all I want to accomplish is to be sure that you understand what you are doing before me today. You understand that I want to be sure that you know that you are pleading guilty to these Counts 5 through 9 and that you know what each one of them contains * * *
At pp. 8–9: THE COURT: Mr. Pack, would you, as an officer of the Court, please, and as being counsel for this defendant, state for the record and in open court whether you entertain any doubt on your part as a result of the conferences you have had with your client as to the clear understanding that the defendant has with respect to what has taken place this afternoon. MR. PACK: No, I have no doubts, your Honor. THE

COURT: In your conferences with him you have gathered clearly, did you, that he understood what you were saying to him? MR. PACK: Yes. THE COURT: And you understood his answers? MR. PACK: Yes.

6. Official minutes, April 4, 1968, p. 6: THE COURT: Were you told what the Judge would do if you pled guilty? THE DEFENDANT: Beg your pardon? THE COURT: Were you given any promise as to what the Judge would do? THE DEFENDANT: No, no. THE COURT: So you tell me that no one has threatened you and no one has promised you anything, and you are doing what you have done of your own free will? THE DEFENDANT: Yes, your Honor.

him.[7] Apparently there were several adjournments before the day of pleading. In the early fall of 1967, an attorney named Felder was assigned by the Court to prepare for trial. He was of the opinion that the accounting features of the case required the services of an attorney more adept in that field. Whereupon, Pack, similarly assigned, came into the case about October, 1967. From then on and up to the time of pleading, he conferred with defendant once every several weeks; he discussed the matter of defense with Messrs. Colbert and Felder.

Pack also discussed with them the advisability of the plea which eventuated; they shared his views and approved the proposed course. All this Pack conveyed to Lau when he conferred with him about it on March 28th and on or about April 1 or 2.

While Pack's testimony is clear on the fact that Lau knew at the time the income tax returns were due that they had neither been prepared nor filed, his testimony as to what he and Lau discussed on the issue of willfulness is not at all well defined. He knew the difference between crimes *malum in se* and *malum prohibitum*;[8] at no time did he state unequivocally either that the essential element of willfulness was denied by Lau or was not taken up in the course of his conferences with defendant.

When we come to the defendant's position as to the sentence which might be meted out, we find a veritable potpourri of explanation in the affidavits and testimony which make up the total record. Clear it is that when the Government started to prepare this case for trial, Assistants United States Attorney conveyed to Pack the idea that a plea to counts 5, 6, 7, 8 and 9 (each a misdemeanor) would be acceptable to cover

the entire indictment and that the first four counts (each a felony) would be dropped. The Government assures us that when inquiry was made of it by Pack as to possible sentence, absolutely nothing on that score was held out, and at no time for any purpose whatever was the possible disposition on sentence even referred to. Pack did not put this in dispute.[9] We accept the averment.

Pack testified that he told Lau it was his "feeling" and that of Messrs. Colbert and Felder that the Court "will probably, in our opinion, impose a very light sentence or a suspended sentence;" that "the maximum is one year on each of the five counts plus a fine." [10] Pack denied Lau's statement by affidavit of June 5, 1968 that Pack told him "the Judge would probably impose a fine or a jail sentence which would be suspended * * * if everything goes wrong when we were before the Judge * * * the Judge might impose as much as a six month sentence, but I should not worry about anything going wrong because an agreement had been reached with the Government attorney. That agreement, Mr. Pack told me, that I would receive a fine or a suspended jail sentence * * * I questioned Mr. Pack about the possibility of the Government attorney not keeping his part of the bargain and Mr. Pack told me this could not happen." And at the hearing it was Lau's testimony that Pack assured him, "All 5 counts together, the maximum sentence may be six months but most likely the Judge won't give you such a penalty. If he give you six months it would be with suspended sentence." [11]

Lau was positive that Pack definitely pointed out to him before his plea that willfulness was an essential element only in the felony counts (1, 2, 3 and 4) but not so in respect of the misdemeanor

---

7. Lau testified, "He—yes, he read it to me very fast but I didn't understand him. He just read to me but I didn't have a copy myself." [Tr. 60]

8. Tr. 30.

9. Tr. 21, 22.

10. Tr. 17, 30. The maximum sentence was not mentioned at the time the plea was taken.

11. Tr. 64.

counts (5, 6, 7, 8 and 9); that he always "had all intention to file * * *"[12] It is highly significant that nowhere in his two affidavits does Lau even mention this distinction; the same is true of defendant's exhibit "A", a detailed outpouring of fifteen pages handwritten by him after sentence and while incarcerated, to be used for the preparation by a fellow prisoner of an affidavit eventually executed and acknowledged by Lau in support of the instant application.

What confronted Lau, he would have us believe, was "just a misdemeanor" which Pack defined for him as slightly more serious than a traffic offense,[13] and carrying with it "a very light sentence." [Tr. 41, 63]. And even shortly before the hearing, we were told the defendant "was led to believe that he was pleading to a minor technical failure to file the tax returns * * * and did not know he was pleading guilty to the willful commission of a criminal act."[14]

Lau put the blame on and excoriated the several accountants who he claims did not fulfill their agreed undertakings with him to prepare for filing the income tax returns, and on his attorneys for failure to properly protect him. He went so far as to swear that Pack "induced, coerced and solicited a plea of guilty from the petitioner on the alleged promise that he would receive no more than six (6) months in jail or a short probationary period of two (2) years, stating in part, that he had talked with the United States Assistant Attorney and said Assistant United States Attorney had offered the above described sentence and further stated that this is what would be so imposed if the petitioner entered a plea of guilty."[15] We reject

this in toto. We find Lau cunning, sharp and shrewd. He took great liberties with the truth; his veracity was successfully impugned.

The defendant was prepared in advance for the proceedings at plea. Pack testified, "I told him the procedure which would be followed by the Court. I told him that he would be questioned by the Court * * * whether he had been given any assurance as to what the sentence would be. I did not tell Mr. Lau how he was to answer the questions * * *"[16] For his part, Lau's affidavit of June 5, 1968 (p. 3) has this to say: "Although I considered that a promise had been made, I stated in Court a negative answer. I felt that it was my part of the bargain to plead guilty and otherwise remain silent, because it would have been insulting to the judge if I indicated that I know what the sentence was to be."

Neither Pack nor his client, however, reckoned with the pre-sentence investigation and report of our probation department, or that it might reveal data[16(a)] concerning defendant upon which this Court would see fit to predicate a sentence far in excess of that anticipated. Neither were cognizant evidently of the truth that certain misdemeanors are saturated with moral turpitude; that the classification of criminal offenses does not necessarily connote the depth of iniquity involved; that a criminal act designated a misdemeanor in one state is a felony in another; that an alarming proportion of misdemeanors are actually reduced felonies.

The burden of proof certainly has not been met; we are not convinced that, at the time he entered his plea Lau

---

12. Tr. 63.

13. "I asked Mr. Pack to explain the meaning of the term 'misdemeanor' and he told me that it was a minor crime equivalent to stealing less than $50 or having a fist fight with another person." (Lau's affidavit of June 5, 1968, p. 2).

14. Reply memorandum of Elliot A. Taikeff dated June 12, 1968, p. 1.

15. Lau affidavit of May 14, 1968, p. 2.

16. Pack's affidavit of May 29, 1968, p. 4.

16(a). It included convictions (Federal and State) for defrauding employees of wages, and withholding vital information concerning factory "home workers," all in violation of laws which prescribe fair labor standards.

did not know that in order to convict it was imperative that proof be adduced that he failed to file the tax returns wilfully and knowingly. Although not requisite for the instant determination, we are inclined to believe the contrary. We find no "manifest injustice" under Rule 32(d) and no ground for relief under section 2255 of Title 28, for Lau entered his plea voluntarily, advisedly, intentionally and understandingly.

 There is still another aspect of this matter which warrants action. It is abundantly clear to us that Lau engaged in willful thinking to the extent that he put out of his mind what Pack had told him about the maximum sentence possible,[17] and nurtured almost to the breaking point a self-induced conviction that the sentence to be meted out would actually come to pass. We now have a clear explanation of Lau's physical behavior immediately following pronouncement of sentence when he registered not disappointment alone but genuine shock to an extraordinary degree. While not indifferent to reactions by defendants when sentences are imposed, his was extraordinary and quite startling.

While all this was of his own doing— he brought it on his own head—and while we are not here either to accommodate the sentence to defendant's expectations or regard his experience at sentencing good and sufficient reason for a declaration of manifest injustice, self-inflicted shock of such proportions is in itself a measure of punishment despite its being neither judicially prescribed nor approved. It becomes a matter which calls for consideration in an entirely different direction. Despite our estimate of Lau as already indicated here, we feel constrained to reconsider the sentence heretofore imposed. (We add that the hearing also yielded certain minor items which operate in defendant's favor.)

17. Even if there had been erroneous advice of counsel, that is not tantamount to such manifest injustice as would warrant setting aside the judgment of conviction by allowing Lau to withdraw his plea. Meredith v. United States, 208 F.2d 680 (4th Cir. 1953); Ridgeway v.

By no means do we attempt to lay down a new basis for reconsideration of sentencing. We emphasize that the circumstances peculiar to this case alone compel our action. After all, like guilt sentencing is personal.

Accordingly, this Court on its own motion under Rule 35, F.R.Crim.P. reduces the sentence to one year on each of the five counts, the sentences to run concurrently with each other.

This shall constitute our Findings of Fact and Conclusions of Law.

Defendant's application to set aside the judgment of conviction entered on May 9, 1968 is denied in all respects.

On the Court's motion, sentence is reduced as indicated above.

So ordered.

United States, 205 F.2d 680 (6th Cir. 1953); Tabor v. United States, 203 F. 2d 948 (4th Cir. 1953); United States v. Warren, 181 F.Supp. 138, 142 (E.D. N.Y.1959); United States ex rel. Duchin v. Follette, 251 F.Supp. 1006 (S.D.N.Y. 1966).